E. V. ALLEN v. THE STATE.

No. 12481. Delivered October 9, 1929.
Rehearing denied November 13, 1929.
Reported in 21 S. W. (2d) 527.

The opinion states the case.

*Maury Hughes* and *T. F. Monroe,* both of Dallas, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, death.

On the 13th day of December, 1927, the First State Bank of Carbon was entered by two men and the sum of $5676.00 in money taken from its vaults at the point of a pistol. The robbers were identified as one Scotty Hyden and the appellant. Hyden apparently worked on the inside, entering the vault and taking the money, while Allen stood on the outside with a drawn pistol and prevented any interference. The State's testimony shows that they each and both participated in the robbery, after which they fled together in an automobile. Appellant denied his presence, his defense being an alibi.

The Court charged the law of principals in the abstract but failed to apply same to the facts in the case and his failure to make this concrete application of such law is made the subject of a proper exception. The Court authorized the conviction of appellant as a principal offender and there was no testimony raising any other issue. We cannot conceive how appellant could have been prejudiced by the failure of the Court to authorize a conviction of him on an additional theory. Many defensive issues in connection with the law of

principals might be raised which would require a full and affirmative submission by the Court, but suffice it to say that none of these were present in this case. The sole issue was whether or not appellant was present and committed the offense. This the Court properly submitted. This exact question was discussed in the recent case of Durham v. State, 16 S. W. (2nd) 1092, and we can here add nothing to what we there stated in overruling a similar contention. See also Robinson v. State, 37 Tex. Crim. Rep. 195.

Jury misconduct is alleged in the motion for new trial and we find it unnecessary to specifically refer to all of these matters. Among these allegations are (1) that the jury considered extraneous crimes admitted in evidence as circumstances to govern them in fixing the punishment and that the verdict was influenced thereby;

(2) That before the penalty had been reached and while eleven jurors were holding out for the death penalty and one juror, E. B. Gude, who voted for a term in the penitentiary, the eleven jurors prayed in the presence of the said juror, E. B. Gude, a series of prayers that the said E. B. Gude's judgment should be changed by the Almighty God, and after said series of prayer and the influence of the members of the said jury changed the verdict of the juror, E. B. Gude, to the death penalty.

It appears that appellant on cross-examination as a witness admitted having committed other felonies and having been sent to the penitentiary therefor. The Court in his charge limited the consideration of this to one purpose, viz., as affecting appellant's credibility as a witness. We find nothing in the statement of facts set out in the bill of exception presenting this matter which sufficiently sustains this particular allegation. Nor do we think that the verdict of a jury may be impeached by proof that the jurors failed to follow the instructions of the Court and misappropriated testimony. Esquivel v. State, 93 Tex. Crim. Rep. 125; Jack v. State, 20 Tex. Crim. App. 656; Sims v. State, 96 Tex. Crim. Rep. 519.

With reference to the allegation as to the prayer, the record shows that E. B. Gude was elected foreman; that the jury finally voted ten for the death penalty and two for a penitentiary sentence and that Gude was one of these two; that immediately after Gude was elected foreman and before any discussion of the case by the jury occurred and long before any vote was taken, he called for a prayer. Juror O'Brien described the scene as follows:

"You could have heard a pin drop I guess, all was quiet in a moment or two. Gude took his hands from his eyes and there were

tears in his eyes. That is what occasioned the remark . . . and Mr. Gude called for the prayer. Mr. Gude, the words he used in calling for the prayer was, 'I want us to pray.' . . . The prayer was for divine guidance."

This was the only prayer offered. The record not only fails altogether to sustain the allegations of the motion setting up this matter but it was affirmatively shown that nothing of a prejudicial nature occurred during said prayer. It will be noted that Gude himself called for it. The prayer does not appear to have been used as a Pharisaical cloak to cover an argument against appellant.

In the state of this record we are of the opinion that no possible injury could have happened to appellant from such proceedings.

There is an argument found in the brief of jury misconduct based upon a statement credited to juror Williams to the effect that appellant was born with a silver spoon in his mouth and had violated all the laws of the land to satisfy his personal desires. Without quoting the lengthy statement of Williams, suffice it to say that we do not so construe his statement. It seems to have referred to that class generally to which appellant was not shown to belong. The argument was of a general nature, and came within the rule laid down with reference to jury arguments in the case of Jack v. State, 20 Tex. Crim. App. 656.

It is finally argued that the evidence is insufficient to sustain the death penalty because no injury was inflicted upon any of the persons robbed and no shots fired. The constitution has entrusted to a different department of the government the right to prescribe punishment with which we have no right to interfere. Acting within its constitutional rights the Legislature has fixed the extreme punishment in offenses of this character at death and this regardless of whether the person robbed has been injured. We cannot overturn the verdict of the jury upon the reasons assigned without arrogating to ourselves a right plainly withheld from us and which would amount in effect to a judicial amendment by us of the penalty prescribed by the Legislature. The Legislature having authorized the extreme penalty in this case and the jury under proper instructions and supported by sufficient evidence having inflicted it, we are not authorized to overturn it.

Finding no error in the record and believing the evidence sufficient, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant files a motion for rehearing setting up that the acts and conduct on the part of the jury as set forth and outlined in bill of exception No. 4, amount to such misconduct as to require a reversal. We have again examined the bill. We find nothing in same leading us to conclude that our original opinion was wrong. On the contrary, the serious attitude of the jurors which caused them to engage in solemn prayer before beginning a consideration of the case, impresses us with the fact that they were men anxious and desirous of arriving at a fair decision in a case involving the life and liberty of the accused. The statement of the juror Williams is discussed in our original opinion. It does not appear to be a statement of any facts known to juror Williams but to be a kind of general statement in the nature of an argument setting forth conclusions of the juror based on his reading history, etc. We deem it unnecessary to enter into any extended discussion of these points.

The motion for rehearing is overruled.

*Overruled.*